SCHELL (KNIGHT v.). See Case No. 7,887.

SCHELL (KNOEDLER v.). See Cases Nos. 7,889 and 7,890.

SCHELL (REIMER v.). See Case No. 11,676.

SCHELL (WETTER v.). See Case No. 17,-470.

## Case No. 12,446.

### SCHELTER v. YORK et al.

[Crabbe, 449.] [1]

Circuit Court, E. D. Pennsylvania. Sept. 11, 1841.

SEAMEN — ASSAULT ON BY MASTER — WEAPON — PUNISHMENT—DAMAGES.

1. A sword is an improper weapon with which to strike an unresisting seaman, when there is no appearance of mutiny.

2. It is contrary to every principle of justice for a captain to condemn and punish a seaman immediately he is complained of by the mate, and without investigation of any kind.

3. In fixing the amount of damages in a case of assault and battery, the court will consider the situation of the parties and the various aggravating or mitigating circumstances of the case.

This was a libel for assault and battery [by Frederick Schelter against Henry York and John Hennessey]. The case came on for a hearing, before Judge HOPKINSON, on the 10th September, 1841.

H. Hubbell, for libellant.

Mr. Hirst, for respondents.

HOPKINSON, District Judge. The libel charges York, the master, and Hennessey, the mate of the ship Adelaide, with assaults and batteries. The transactions complained of occurred at the quarantine ground, a few miles below this city, on the return of the ship from a voyage to London.

In regard to the mate, this is the only charge against him by the libellant, or any of the crew, on the whole voyage out and home, and he has shown a good character. The vessel was about getting under way, at eight o'clock in the morning, to come up to the city. There was naturally some impatience to get off. The libellant is admitted to be slow in his movements and phlegmatic in his temper—as, indeed, is constitutional in most Germans—and he did not move quite actively enough for an American seaman. One witness says that the mate pushed the libellant, another that he shoved him; one that he struck him with the back of his hand. There is no evidence of the kick alleged in the libel to have been given. As to the bucket of water thrown over the libellant, it is a common mode of making a sluggard move quickly, and surely no great punishment in the month of August. As to the scuffle which took place in the forecastle, we do not know enough about it to say who was in the

wrong. On the whole I do not see that, as regards the mate, there is any ground for damages, either on account of any violence or cruelty to the libellant, or any example to others; there was in his case no excess of punishment, or improper weapon used.

As to the captain, there are no other specific charges against him, as respects the libellant or the rest of the crew, on the passage out or home. At London, the libellant and another made some complaint against him because they wished to leave the vessel, and for ill usage, but nothing specific has been shown. They both rejoined the ship, and have shown no ill usage out or home, up to the arrival at the quarantine ground. The whole case rests upon that transaction. I have spoken of a scuffle or encounter, between the mate and the libellant, in the forecastle, in which both parties seem to have used their own means of attack and defence, and both received some slight injury. The mate came on deck, and complained to the captain, showing marks of blood on his mouth, but whether this came from wounds inflicted on the mate, or from those of the libellant, does not appear. The captain then called to the libellant to come up out of the forecastle, and caught up a belaying pin to strike him: this the libellant prevented; the captain then went and got his broadsword. For this there was no necessity, there being not the least appearance of mutiny or disobedience of any kind. The libellant was ordered to be tied up, and, while they were doing so, the captain struck him three or four times with the sword, cutting his neck; but whether he struck with the flat side, the back, or the edge, does not appear, probably not with the edge, or the injury would have been greater. It was very improper, however, to use a sword at all upon a man making no resistance, actually in the hands of the two officers, about to be tied up to be flogged, and begging for mercy. The libellant was afterwards severely beaten, strange to say, by the captain himself. With a cruel coolness he was told that so many lashes were for the mate, so many for the captain himself, and the rest for the libellant's misconduct on the voyage. It is to be observed that this was done when the voyage was within a few hours of being ended, and when there was no occasion for an example of discipline.

It is said that the libellant called on the crew to help him. There is some uncertainty as to the time when this was done, and more as to the language used. One witness says that before the libellant was tied up he called all hands to witness it, and that afterwards he said, "For God's sake, come and help me." Another witness gives the same account, and describes the captain as flourishing the cutlass over his head as if he was going into action. The reasons assigned by the captain for this punishment were the complaint of the mate, and the libellant's misconduct during the voyage. For the first, the captain never inquired into the circumstances, never heard what the man had to say, but at once condemned and punished him. This was contrary to every principle of justice. For the second, we have never heard of the misconduct alluded to. If there had been any it should have been punished when the offence was committed.

I think this is a case for damages, but, at the same time, I must have regard to the situation of the respondent, and, considering all the circumstances of the case, not turn justice into oppression, because he has been guilty of an abuse of power. Decree for the libellant for fifty dollars and costs, as regards the respondent York, and that the libel be dismissed as to the respondent Hennessey.